## 14049

### SALWAY v. MARYLAND CASUALTY CO.

(179 S. E., 787)

*Messrs. Herbert & Dial,* for appellant,

*Messrs. Royall & Wright* and *Willcox, Hardee & Wallace,* for respondent,

April 25, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The Bryce Plumbing & Heating Company is a South Carolina corporation with its principal place of business at Florence, S. C. It obtained from the United States Government a contract to do certain work to be performed in the erection of a government hospital at Batavia, N. Y. By the terms of its contract, and the United States statute, it was required to execute a bond in favor of the government to secure the performance of the contract. The bond was duly executed with Standard Accident Insurance Company as surety. The Bryce Plumbing & Heating Company sublet certain of the work covered by its contract with the govern-

ment to Wm. R. McLoughlin, Inc., which is a Massachusetts corporation, which is not domesticated in South Carolina, and not licensed to carry on business here, and not engaged in doing business in this State. The contract between Bryce Plumbing & Hearting Company, which we shall call the Bryce Company, and the McLoughlin Company, was executed at Florence, S. C., September 2, 1932. By its terms McLoughlin Company was obligated to secure its performance of the contract by the proper bond if required to do so by the Bryce Company. In pursuance of such demand, it executed its bond to the Bryce Plumbing & Heating Company in the sum of $30,000.00 with Maryland Casualty Company as surety. This bond was executed at Boston, Mass., and delivered to the principal, Wm. R. McLoughlin, Ins., at Worchester, Mass., its principal place of business. McLoughlin sent it to Bryce Company, at Florence, S. C., where it was received October 25, 1932. McLoughlin defaulted in the completion of his contract leaving owing to the plaintiff in this action the sum of $1,263.73, for electrical supplies furnished McLoughlin Company, and used by it in work on the government hospital at Batavia, N. Y., and in performance of McLoughlin's contract with Bryce Company.

This action was begun in the county Court of Florence County in this State by the plaintiff, a citizen and resident of the State of New York, aginst Maryland Casualty Company, a corporation under and by the laws of the State of Maryland, by service of the summons and complaint on the insurance commissioner of South Carolina.

The defendant's attorneys, after due notice to plaintiff's attorneys that it appeared solely for the purpose of making the motion and without submitting to the jurisdiction of this Court, moved for the dismissal of the action on the grounds:

1. That there is and was pending, at the commencement of this action, in the Court of Common Pleas for Florence County an action by Bryce Plumbing & Heating

Company for the full penalty of the identical bond, alleged in plaintiff's complaint, viz., $30,000.00.

2. That the sole beneficiary named in the bond alleged in the within complaint is the Bryce Plumbing & Heating Company, and plaintiff has no cause of action thereunder.

3. That, under the provisions of the United States Code, Title 40, Section 270 [40 U.S.C.A. § 270] commonly known as the Heard (Hurd?) Act, all persons furnishing labor or material for the construction of any public building under a contract with the United States are given a right of action against the bond of the contractor prosecuting such work, being Bryce Plumbing & Heating Company, such bond being required under the provisions of such section and the protection of such bond extending to all persons shown to have supplied material or labor entering into the work, and who have not been paid therefor.

4. That the materials alleged to have been furnished by the plaintiff were furnished in the State of New York, wherein the work was prosecuted, and under the provisions of the Heard (Hurd?) Act hereinabove referred to the District Court of the United States in the district in which the said contract was performed has exclusive jurisdiction, and, further, no suit shall be brought on said bond within a period of six months from the final settlement of the contract.

5. That the proper venue of the within action is the State of New York.

6. And upon such other grounds as to the Court may seem just and proper.

The Judge of the County Court held that his Court had jurisdiction of the parties and the subject-matter of the action, and overruled the motion with leave to defendant to answer.

Notice was given by defendant of its intention to rely upon the jurisdictional questions made in its motion, and that it reserved all of its rights thereunder. It then an-

swered "reserving all rights to contest the jurisdiction of this Court and without waiving any of such rights."

The answer admitted formal allegations of the complaint, denied other allegations. Alleged the same thing upon which its motion to dismiss had been made; alleged that Bryce Company did not adhere to the terms of the bond executed by defendant, but disregarded them without the knowledge and consent of defendant, in this: That both before and after the execution of the bond Bryce Company knew that McLoughlin was in precarious financial condition and did not bring the fact to the attention of defendant; that McLoughlin had failed to perform the conditions of the contract prior to the execution, which things were known to Bryce Company, but unknown to this defendant, and of which Bryce Company, failed to advise or inform defendant, to its detriment; that defendant's liability, if any, on the bond was thus nullified.

That the liability of the defendant, if any, and the rights of both parties are governed by and should be determined under the laws of the State of New York, which laws deny to the plaintiff any cause of action against the defendant on the grounds set out in the complaint.

The case was tried by Judge Sharkey of the County Court of Florence County, upon the pleadings, exhibits, and statements of what G. T. Bryce would testify on behalf of plaintiff if he were present, and a statement of what Alfred C. Senecal would testify to on behalf of defendant, if he were present.

Judge Sharkey, under date of August 1, 1934, filed his decree giving judgment for plaintiff for the amount demanded in the complaint.

Defendant appeals, setting forth its grounds of appeal under twelve exceptions, and certain sub-divisions. The appeal is from the order overruling the motion to dismiss the complaint, which motion challenged the jurisdiction of

the Court, and from the final decree awarding judgment for plaintiff.

We may take it as settled in this State that under a contract secured by bond, where a third unnamed person has performed services or furnished supplies used in the performance of the contract, such third person is protected by the bond and may sue and recover thereon. It is needless to recite authorities.

That Maryland Casualty Company was domesticated in this State and doing business here, is conceded. If plaintiff had the right to bring his action in this State, and against this defendant, the service of process upon the insurance commissioner of this State gave jurisdiction of the action to the Courts of this State.

It remains to be determined whether plaintiff had the right to sue defendant in this State on the bond executed by it in favor of the Bryce Plumbing & Heating Company.

We are confronted by an unusual situation:

Plaintiff, a resident and citizen of New York, brings action against defendant, a corporation created by and under the laws of the State of Maryland with its principal place of business in the City of Baltimore, Md., in the Courts of South Carolina, on a bond executed in Massachusetts to secure the performance of a contract in the State of New York, the beneficiary of the bond being a South Carolina corporation with its place of business in this State. The bond was delivered to it at Florence, S. C. The plaintiff seeks to recover for materials furnished by it to a subcontractor, which were used in the construction of a United States Government building in Batavia in the State of New York.

As we have analyzed this anomalous situation, the three controlling questions with which we are concerned are these:

1. Did the cause of action arise in this State?

2. Is this action controlled by the federal law which reg-

ulates the place where, the time when, and the forum in which such actions may be brought?

3. Did the beneficiary of the bond breach the bond and thereby release the surety from liability thereunder?

Section 826, Vol. 1, Code 1932, under the head of "Actions Against Foreign Corporations," provides that such action may be brought:

"(1) By any resident of this State, for any cause of action.

"(2) By a plaintiff not a resident of this State, when the cause of action shall have arisen, or the subject of the action shall be situated, within this State."

It is necessary to determine, then, whether plaintiff's cause of action arose in this State, or whether the subject of the action is situated in this State.

What is the cause of action?

This Court, in the case of *Ophuls & Hill v. Carolina Ice & Fuel Co.*, 160 S. C., 441, 158 S. E., 824, 827, said this: "Many attempts to differentiate the meaning of the terms 'cause of action' and 'subject of action' occur in the law books. None of them more clearly states that difference than does Bliss on Code Pleading (3rd Ed.), 214, quoted with approval in our case of *Columbia National Bank v. Rizer,* 153 S. C. [43], at page 55, 150 S. E., 316, 320, 68 A. L. R., 443: 'The cause of action has been described as being a legal wrong threatened or committed against the complaining party; and the object of the action is to prevent or redress the wrong by obtaining some legal relief. The subject of the action, is, clearly, neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the Court, nor is it that which the Court is asked to do for him, but it must be the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property,

or the contract and its subject-matter, or other thing involved in the dispute."

Another clear and succinct definition of the words "subject of the action" is found in the case of *Humbert v. Brisbane,* 25 S. C., 506, which quotes from Pomeroy's Remedies, page 800, § 775, as follows: "It would, it seems to me, be correct in all cases, legal or equitable, to say that the 'subject of the action' is the plaintiff's main primary right which has been broken, and by means of whose breach a remedial right arises."

In the case of *Esbensen v. Hover,* 3 Colo. App., 467, 33 P., 1008, 1009, cited with approval in *Columbia Nat. Bank v. Rizer,* 153 S. C., 43, 150 S. E., 316, 320, 68 A. L. R., 443, it is said: "It was held that in an action for goods sold the defendant could not set up a counterclaim for damages arising from an excessive levy under an attachment. The Court said: 'This counterclaim did not arise out of the transaction set forth in the complaint, and was not connected with the subject of the action. The transaction was the sale and delivery of the goods, and the price of the goods was the subject of the action.'"

It is patent that in the case at bar the "cause of action" was the failure of McLoughlin to pay for the material sold to him by plaintiff. There can be no particle of doubt that this cause of action arose in New York.

The trial Judge in our case held that his Court had jurisdiction of the case because the subject of the action was the bond which McLoughlin had executed to Bryce Company, and which was in possession of the Bryce Company, in the County of Florence in this State. That position is untenable. The subject of the action is the materials furnished to McLoughlin by the plaintiff. Certainly these materials were never situated within this State.

It is said in the case of *Hodges v. Lake Summit Co.,* 155 S. C., 436, 152 S. E., 658, 661: "It does not follow as a matter of course that the Court had jurisdiction of the

subject-matter of the controversy for the reason simply that it had jurisdiction of the person of the defendant. In order to accord to the Court jurisdiction of the entire case, it must appear that its jurisdiction of both the person of the defendant and the subject-matter cannot be questioned."

The cause of action in this case did not arise in this State, nor is the subject of the action situated within this State. It follows that the Court never acquired jurisdiction of the defendant, and erred in overruling defendant's motion to dismiss the complaint, and erred in assuming jurisdiction and trying the case.

2. Is this action controlled by the federal law which regulates the place where, the time when, and the forum in which such actions may be brought?

Let it be borne in mind that this whole transaction had its origin in the fact that Bryce Heating & Plumbing Company obtained from the United States Government a contract to do certain work in connection with the erection by the government of a hospital at Batavia, New York, and gave bond for the faithful performance of the work. It sublet a part of the work to Wm. R. McLoughlin, Inc., and required McLoughlin to secure the faithful performance of its part of the work by bond.

This was a government job and is to be governed and the contracts relating thereto construed in accordance with federal law and regulations. The applicable law is found in United States Code Annotated, Title 40, Section 270:

"Bonds of contractors for public buildings or works; rights of persons furnishing labor and materials. Any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall

promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed *pro rata* among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the district Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: * * * And provided further that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto

within one year from the completion of the work under said contract, and not later."

This United States statute has been construed in numerous federal cases. See *United States, for Use of Hill, v. American Surety Co.,* 200 U. S., 197, 26 S. Ct., 168, 50 L. Ed., 437, and cases cited; *Babcock & Wilson et al. v. American Surety Co.* (C. C. A.), 236 F., 340, and cases cited.

The wisdom of the Act of Congress is made apparent in our case. Bryce Company brought its action in the Court of Common Pleas for Florence County to recover of this defendant the full amount of the penalty of the bond given to it by its subcontractor, McLoughlin. The plaintiff claims to be a creditor of McLoughlin on account of material furnished in the prosecution of the work, for the surety of which McLoughlin gave bond, and brings its suit in the County Court of Florence County on the same bond. The record does not disclose how many debts are due by McLoughlin to laborers and materialmen for labor on and materials furnished it for use in the erection of the building. Suppose Bryce Company gets judgment against the surety for the full amount of the penalty of the bond, $30,000.00, and the plaintiff in this action, and it may be others, get judgment against defendant, the defendant will be subjected to liabilities in excess of the amount it agreed to be surety for. For this reason, doubtless, the Federal Act declares that laborers and materialmen may bring their actions in the District Court of the United States in the district where the work is done and materials furnished, and nowhere else. And it further provides that only one such action shall be brought, and all creditors of the named class may intervene.

Plaintiff should have brought, and may now bring, his action against Bryce Plumbing & Heating Company and its surety, Standard Accident Insurance Company, in the United States District Court of the proper district in New

York. If Bryce Company is called on to pay him, Bryce may recover of McLoughlin. This orderly procedure, it would seem, is the clear intendment of the Federal Statute.

It is pleaded and urged in argument that plaintiff brings this action in South Carolina rather than New York for the reason that under the law of New York he cannot recover in such action.

See the case of *B. F. Sturtevant v. Fidelity & Deposit Co.* (C. C. A.), 285 F., 367.

Will one be allowed thus to use the laws of a jurisdiction in which he is a foreigner to do that which he cannot do in the jurisdiction of his residence?

In the case of *Hodges v. Lake Summit Co., supra,* the question arose whether the paper sued on was barred by the North Carolina statute of limitations; it was not so barred by the South Carolina Statute. The Supreme Court said:

"We do not think that it can be denied that the main purpose of the assignment to Hodges, trustee, was to present the controversy to a South Carolina Court which as was conceived, rightly or not, would apply the statute of limitations of South Carolina rather than that of North Carolina.

"At the same time it must be conceded that if the payee and the pledgee of the note were within their legal rights in executing this assignment, their motive in so doing is not a subject of legitimate inquiry, unless it be made to appear that it was but a plan to vest in the South Carolina Courts a jurisdiction which it otherwise did not have of the controversy."

There can be no doubt that a contract must be enforced in the place of its performance, unless specially provided to be enforced elsewhere. The contract of sale between plaintiff and McLoughlin was made and performed by plaintiff in New York. McLoughlin's default in the performance of his part of it occurred in New York. Clearly it should be enforced under the laws of New York.

It is needless to cite authorities for this position.

3. Did Brice Company breach the conditions of the bond which was executed in its favor by Mc-Loughlin?

The contention of the appellant is that Bryce Company failed to adhere to the terms of the contract between Bryce Company and McLoughlin in the conditions which refer to payments by Bryce Company to McLoughlin. The contract provides that: "These payments are to be made immediately upon the receipt in our office of our check from the Government which is usually between the 7th and 13th of the month, but before these payments are made the subcontractor is to furnish the contractor with a complete list of the manufacturers and companies that they owe with a letter from each of his creditors releasing the contractor from any claim that· would be filed against us, also a detailed release from all employees or any one doing work for them on this contract; accompanying these releases the subcontractor is to furnish a sworn statement that the list furnished is a complete list of all creditors, either for labor or material."

It is the modern rule that sureties who become such for financial consideration are not entitled to the same consideration as are sureties who become such from motives of friendship or accommodation. However, the commercial surety is entitled to be safeguarded in his rights. It is fundamental ·that if the beneficiary of a written obligation release the obligor of any material conditions of the obligations without the knowledge and consent of the surety, the surety is released.

The trial Judge in this case holds that the releases were only to be required by the Bryce Company in the event that it did not require the bond. A study of the entire contract lends strength to this holding. There is no sworn evidence in the record, but the statements of G. T. Bryce on behalf

of respondent, and to Alfred C. Senecal on behalf of appellant, support this finding.

The exceptions thereabout are overruled.

For other reasons hereinabove stated, the judgment of the lower Court is reversed, and the complaint is dismissed.

MR. CHIEF JUSTICE STABLER, MR. JUSTICE CARTER and MESSRS. ACTING ASSOCIATE JUSTICES WM. H. GRIMBALL and G. B. GREENE concur.